ANGÉLICA CHABRÁN HERNÁNDEZ, ETC., Plaintiff and Appellant, *v.* ZOILO MÉNDEZ RÍOS, Defendant and Appellee.

No. 10760. Argued April 6, 1953.—Decided April 24, 1953.

720

*Diego O. Marrero* for appellant. *Antonio Figueroa Rivera* for appellee.

MR. CHIEF JUSTICE SNYDER delivered the opinion of the Court.

This is a suit for filiation and support filed in the former district court of San Juan on November 24, 1950 by Angélica

Chabrán Hernández, representing her minor child, Zoilo Eduardo Chabrán, against Zoilo Méndez Ríos. After removal of the case to the former district court of Humacao, the defendant filed an answer to the complaint and later he filed a motion to dismiss the complaint. The defendant attached to the motion certificates showing that Angélica Chabrán was married to Frank Chaulón in 1936; that she was divorced from Chaulón on January 26, 1945; and that Zoilo E. Chabrán was born on June 23, 1945. In his motion to dismiss the defendant pointed out that under these facts the child is presumed to be the legitimate son of Angélica Chabrán and Chaulón by virtue of § 113 of the Civil Code, 1930 ed.[1] The defendant therefore contended that the complaint did not state facts sufficient to constitute a cause of action against him.

Before the trial court could act on the motion to dismiss, the plaintiff filed an amended complaint in which it was alleged that Angélica Chabrán had been separated from her husband since 1941; that in 1943 the latter had sued Angélica Chabrán for a divorce on the ground of desertion for more than a year; that in 1944 Angélica Chabrán yielded to the love-making of Zoilo Méndez, with the result that Zoilo E. Chabrán was born on June 23, 1945, after Chaulón had obtained a divorce from Angélica Chabrán on January 26, 1945 in the action the former initiated in 1943; that after Angélica Chabrán had demanded to no avail for more than five years that Zoilo Méndez recognize Zoilo E. Chabrán as his child, on October 19, 1950 Angélica Chabrán registered the child in the Registry of Vital Statistics as her natural child; that subsequently Chaulón filed a suit in the former

---

[1] Section 113 reads as follows: "Legitimate children are those born 180 days after the marriage has been celebrated and before 300 days have passed after the marriage has been dissolved.

"Against legitimacy no other proof shall be admitted than the physical impossibility of the husband to use his wife within the first one hundred and twenty days of the three hundred days that have preceded the birth of the child."

district court of San Juan against the plaintiff disputing the legitimacy of the child; and that as the result of the admissions contained in the answer of the plaintiff, the former district court of San Juan entered a judgment holding that Zoilo E. Chabrán was the natural child of Angélica Chabrán.

Thereafter the defendant Zoilo Méndez filed in the instant filiation suit in the Humacao court a motion for summary judgment. Here the defendant again established by the appropriate certificates that under § 113 of the Civil Code Zoilo E. Chabrán was presumptively the legitimate child of Angélica Chabrán and Chaulón in view of the fact that he was born before 300 days had passed after their marriage had been dissolved. But the defendant was now faced with the judgment in the San Juan suit disputing the legitimacy of Zoilo E. Chabrán. The defendant undertook to avoid the effect of this judgment on two grounds. In support of the first ground, he filed certificates demonstrating that the birth of Zoilo E. Chabrán was inscribed in the Registry of Vital Statistics on October 19, 1950, and that Chaulón filed his suit in the San Juan court challenging the legitimacy of Zoilo E. Chabrán on January 29, 1951. Since the suit was filed 102 days after the inscription, the first contention of the defendant in his motion for summary judgment was that Chaulón's right to challenge Zoilo E. Chabrán's legitimacy under § 113 of the Civil Code had prescribed in view of the provisions of § 117 of the Civil Code.[2]

In support of his second ground for summary judgment, the defendant filed certified copies of the complaint, answer and judgment of the San Juan court in the legitimacy case. According to the defendant, these documents showed that the said suit was filed solely against Angélica Chabrán in her individual capacity and not against her as representing her

[2] Section 117 reads as follows: "The action to contest the legitimacy of the child shall be instituted within three months after the inscription of its birth in the registry, if the husband be in Porto Rico, or after six months if he should be abroad, reckoning from the time he has knowledge of the birth."

minor child, Zoilo E. Chabrán. The defendant contended that the child was the only indispensable party to the legitimacy suit; that the judgment which was entered by the San Juan court by consent of the parties against Angélica Chabrán in her individual capacity was therefore null and void; and that the defendant in the Humacao filiation suit could make a collateral attack on the judgment in the San Juan legitimacy suit, despite the fact that he was not a party thereto, because of his interest in the Humacao filiation suit which would be stopped in its tracks if the judgment in the San Juan legitimacy case were void.

On February 12, 1952 the plaintiff filed in the Humacao court an opposition to the defendant's motion for summary judgment. On February 21, 1952 the plaintiff filed a motion asking the court to postpone action on the said motion for summary judgment. In this request for postponement the plaintiff stated (1) that although she believed the judgment of the San Juan court was valid, it was preferable to have the San Juan court "amend its judgment" and thereby cure any possible defect of procedure in the proceeding in that court, and (2) that the plaintiff could obtain such action by the San Juan court within a month and a half. Over the objection of the defendant, the Humacao court granted the plaintiff's request for postponement, giving her until April 7, 1952 to present an amended judgment of the San Juan court.

On April 4, 1952 the plaintiff filed a motion in the Humacao filiation case alleging that Zoilo Méndez had filed a petition for intervention in the San Juan legitimacy case and that this conduct of the defendant had delayed the San Juan proceeding.[3] The plaintiff therefore requested the Humacao court to delay disposition of the defendant's summary judgment until the San Juan court had passed on the plaintiff's motion to "amend the judgment" in the San Juan legitimacy case.

On May 16, 1952 the defendant filed a motion in the Hu-

---

[3] This petition for intervention is not in the record before us.

macao court asking it to pass on his motion for summary judgment in the filiation case. In this motion the defendant states (1) that in view of the death on March 25, 1951 of Frank Chaulón, the original plaintiff in the legitimacy suit, his children, Frank Chaulón, Jr. and María Elisa Chaulón, had filed documents in the San Juan court to "correct the judgment" therein; and (2) that on April 18, 1952 María Elisa Chaulón withdrew from the case, leaving Frank Chaulón, Jr. as the only person interested in "amending the judgment".[4]

The Humacao court set the motion for summary judgment for hearing on May 26, 1952. The defendant appeared at the hearing and argued his motion for summary judgment. The plaintiff did not appear and on June 18, 1952 the Humacao court granted the defendant's motion for summary judgment.[5]

The former district court of Humacao did not pass on the first point raised in the motion for summary judgment; i.e., that Chaulón's cause of action in the legitimacy suit had prescribed before he filed it. However, the trial court agreed with the second ground of the motion to the effect that the judgment in the legitimacy suit was void because the San Juan court had not obtained jurisdiction of the true defendant, Zoilo E. Chabrán. Accordingly, it granted the motion of the defendant for summary judgment. The case is here on appeal by the plaintiff from that judgment.

■ We examine first the question of whether Zoilo Mén-

[4] The record does not contain copies of these documents filed by Frank Chaulón, Jr., and María Elisa Chaulón.

[5] A motion by the plaintiff to postpone the hearing on the defendant's motion for summary judgment reached the trial judge just as he had finished dictating the summary judgment. The motion for postponement asserted that the notice fixing the hearing for May 26 had been misdirected to his attorney's former address and that the attorney had not received the notice until June 11. The trial judge stated in a footnote to the summary judgment that the notice had been sent to the only address of counsel for the plaintiff which appeared in the record, and that in any event the court was of the view that the motion for postponement should not be granted.

dez, who was not a party to the legitimacy suit, may make a collateral attack on the judgment entered in that case. A collateral attack may be made on a judgment, on the ground that it is void because the court which rendered the judgment had no jurisdiction of an indispensable party, by a person who was not a party to the suit, provided the latter is adversely affected by the judgment. *Cancel* v. *Martínez, ante,* p. 100; *Ríos* v. *Román,* 71 P.R.R. 193; *Pérez* v. *District Court,* 70 P.R.R. 624; *Suárez* v. *Betancourt,* 64 P.R.R. 447, 450; *Mitchell* v. *Automobile Owners I. Underwriters,* 118 P. 2d 815 (Cal., 1941); *Arenas* v. *United States,* 95 F.Supp. 962, 970–71 (Cal., 1951), affirmed in 197 F.2d 418 (C.A. 9, 1952); Restatement, Judgments, § 93, pp. 459 *et seq.;* 1 Freeman on Judgments, 5th ed., § 319, pp. 636, 639. We must therefore first be satisfied that Zoilo Méndez is adversely affected by the judgment in the legitimacy case before we discuss the validity of the said judgment.

In support of her contention that Zoilo Méndez is not adversely affected by the judgment in the legitimacy case, the plaintiff argues that the judgment of the San Juan court that the child was not legitimate is not a holding that Zoilo E. Chabrán is the natural child of Zoilo Méndez; that an adjudication to that effect may be made only by the Humacao court in the filiation suit; and that the defendant will have his day in court in the filiation case. But the fact that the defendant will always have the opportunity to demonstrate in the filiation suit that Zoilo E. Chabrán is not his natural child is not conclusive on the question before us. We must bear in mind that under § 116 of the Civil Code only the husband or his legitimate heirs may challenge the legitimacy of the child.[6] *People* v. *Santiago,* 70 P.R.R. 798; *Dejol* v.

---

[6] Section 116 reads as follows: "Legitimacy can only be disputed by the husband or his legitimate heirs. The latter can only contest the legitimacy of a child in the following cases:

"1. If the husband has died before the termination of the period fixed for instituting his action in court.

"2. If he shall have died after presenting his action without having desisted from it.

"3. If the child was born after the death of the husband."

*Johnson*, 12 La. Ann. 853 (1857); *Ex Parte Madalina*, 164 Pac. 348 (Cal., 1917). The Humacao court would therefore have been compelled to dismiss forthwith the instant filiation suit were it not for the judgment of the San Juan court in the legitimacy case. In other words, a valid judgment in favor of the plaintiff in the legitimacy suit is necessary to open the door of the Humacao court for the filiation suit. It follows that, as the plaintiff relies on the judgment of the San Juan court in the legitimacy case to get into court with the filiation suit against Zoilo Méndez, the latter's interests are adversely affected by the San Juan judgment. To hold otherwise might encourage collusion or fraud—although we by no means intimate that it exists in this case—in the filing and disposition of suits in this highly sensitive social area around which the Legislature has erected a number of safeguards, as embodied in § 116 and other sections of the Civil Code. *Cf. Pabón* v. *Alvarado et al.*, 28 P.R.R. 538, 544. We therefore hold that although Zoilo Méndez was not a party to the legitimacy suit in San Juan, when the judgment in favor of the plaintiff therein is invoked as a necessary condition precedent to the filiation suit against him in Humacao, he is adversely affected by the said judgment and is therefore entitled to make a collateral attack on it by establishing if he can that the judgment is void because the child, an indispensable party, was never joined as a defendant in the legitimacy suit. See *Old Colony Trust Co.* v. *Porter*, 88 N.E. 2d 135 (Mass., 1949).

 We turn to the merits of Zoilo Méndez' contention that the judgment in the legitimacy suit is void. Both parties agree that the child, whose status was at stake, was an indispensable party and that the mother was at the most a proper party defendant. *Dejol* v. *Johnson, supra; Succession of Saloy*, 44 La. Ann. 433, 442 (1892); *Ducasse's Heirs* v. *Ducasse*, 45 So. 565 (La., 1908); 17 *Enciclopedia Jurídica Española* 805; see *Cubano* v. *Del Valle*, 69 P.R.R. 538; *Burgos* v. *Vázquez*, 48 P.R.R. 405; *Núñez* v. *Lacot*, 32

P.R.R. 76; *Pabón* v. *Alvarado et al., supra.* However, it is undisputed that if the suit was brought and prosecuted to judgment against the mother only, the judgment declaring the child illegitimate was void because of the failure to join an indispensable party defendant, the child. *Fuentes* v. *District Court,* 73 P.R.R. 893; *Cancel* v. *Martínez, supra; People* v. *Henneman,* 61 P.R.R. 184; Rules 19 and 20, Rules of Civil Procedure; *Amann* v. *Burke,* 186 So. 769 (Ala., 1939); *Thieman Bros.* v. *Bodine,* 202 S.W. 2d 912 (Mo., 1947); *Samter* v. *Klopstock Realty Co.,* 88 P. 2d 250 (Cal., 1939); 3 Moore's Federal Practice, 2d ed., pp. 2145–47, 2205. It follows that the collateral attack of Zoilo Méndez on the judgment in the legitimacy case is well-founded if we agree with him that the child was never made a party to the suit.

■ The plaintiff asserts that the pleadings show that the minor actually was a party defendant in the legitimacy suit. We cannot agree. The caption reads "Frank Chaulón Plaintiff vs. Angélica Chabrán Defendant." There is nothing in it to indicate that Angélica Chabrán was being sued in her representative capacity with *patria potestas* over her child. The body of the complaint is to the same effect. In alleging the facts which he claims entitle him to judgment, the plaintiff, Frank Chaulón, refers throughout the complaint to *Angélica Chabrán* as the defendant. The prayer of the complaint is that "Zoilo E. Chabrán be decreed illegitimate and the natural child of the defendant, Angélica Chabrán." The complaint is signed by the attorney for the plaintiff Frank Chaulón. That attorney was at the time the law partner of the attorney for the plaintiff in the filiation case, Angélica Chabrán, in representation of the child. Two days after the complaint was filed in the legitimacy case, Angélica Chabrán filed an answer as defendant *in her own name.* The answer admits the allegations of the complaint, prays that judgment be entered declaring Zoilo E. Chabrán is the natural child of Angélica Chabrán, and waives the right of appeal. The plaintiff thereupon moved for judgment in his favor on

the pleadings, which the San Juan court granted, after it had questioned Angélica Chabrán personally at the hearing on the motion and ascertained once more that she, the defendant, admitted all the facts alleged in the complaint.

When we examine the pleading and other circumstances of the legitimacy case, bearing in mind that the child is an indispensable and the mother at the most a proper party, we cannot see on what basis we can hold that Angélica Chabrán appeared in the legitimacy case representing her child. On the contrary, everything she said and did shows that she was acting in her individual capacity. In reaching this conclusion, our views have not been controlled by mere matters of defective pleading or dialectics. We have said time and again in recent years—and we repeat—that wherever possible substantive rights must not be thwarted by gossamer threads of distinction in pleadings. See *Meléndez* v. *Iturrondo*, 71 P.R.R. 56, and concurring opinion, p. 60; *Serra* v. *Transportation Authority*, 68 P.R.R. 581, 585. But the cases where we have ignored seemingly important defects of form in pleadings for the most part have been suits where we are able to find from the pleadings some indication that a *plaintiff* had properly brought a representative suit either for damages belonging to a conjugal partnership or for filiation. *Meléndez* v. *Iturrondo, supra; Maldonado* v. *Quetell*, 68 P.R.R. 390. Here we have no such defects in form made by the *plaintiff* in his own pleadings. On the contrary, the plaintiff, Frank Chaulón, chose to sue only Angélica Chabrán in her individual capacity as a defendant. The plaintiff was entitled to join Angélica Chabrán in the suit; but he was required to include the child as an indispensable party defendant. This was never done. Nor was the child ever served as required by Rule 4 (*d*) (2) of the Rules of Civil Procedure. See *Biaggi* v. *District Court*, 68 P.R.R. 378. Instead, two days after the complaint was filed, Angélica Chabrán, appearing without counsel, admitted the allegations for herself and in her own name. We cannot construe such con-

duct on her part as done in representation of her child when (1) the question involved was resistance to an imputation of illegitimacy and not as in the *Quetell* case an assertion as plaintiff of a status and (2) the interests of the child and the mother, both proper party defendants, might be in conflict, see *Biaggi* v. *District Court, supra*. We therefore hold that the child was never a party to the legitimacy suit.

We have already indicated that a judgment entered without jurisdiction over an indispensable party, as the child in the legitimacy case, is void and is subject to collateral attack by Zoilo Méndez in the present filiation suit because he is adversely affected by the judgment in the legitimacy case. Consequently, the trial court did not err in granting the defendant's motion for a summary judgment in this case.[7]

The plaintiff complains, however, that the Humacao court erred in acting too hastily on the defendant's motion for summary judgment. She argues that it should have granted her motion for further delay until the San Juan court could act on her request of the latter "to correct the judgment" in the legitimacy case. We disagree with this argument of the plaintiff. The facts set forth earlier in this opinion show that the Humacao court was liberal with the plaintiff in that it kept the motion for summary judgment pending during the period of time requested by the plaintiff herself to obtain from the San Juan court such corrective action as the plaintiff had in mind. As the record does not contain the documents filed in the San Juan court by the plaintiff for that purpose, we have no way of knowing exactly what steps the plaintiff took in the San Juan court. We cannot find under the circumstances of this case that the Huma-

---

[7] Usually a collateral attack is made on a judgment in a different suit when one of the parties in the latter claims the *benefits* of the judgment in the earlier case. Here we have the unique situation of a *losing* party in the first case attempting to *rely* in the second suit on the judgment rendered *against* her in the first case. But this reversal of the usual roles of the parties does not change the principles of law involved herein.

cao court was compelled to wait longer than it did before passing on the defendant's motion for summary judgment.

■ Since this case involves the status of a minor, we think it appropriate to point out that the summary judgment in favor of the defendant which we are affirming will not bar a future filiation suit by the plaintiff against the defendant on the ground of *res judicata*. The principle which comes into play here is set forth in the Restatement, Judgments, § 54, p. 211, as follows: "When a judgment is rendered for the defendant on the ground of the non-existence of some fact essential to the plaintiff's cause of action, the plaintiff is not precluded from maintaining an action after such fact has subsequently come into existence." In Comment *c* to § 54 the following appears at p. 213: "The rule stated in this Section is applicable where the liability of the defendant is conditional upon the happening of some event. In such a case if the plaintiff brings an action before the event has occurred, and judgment is given for the defendant on this ground, the plaintiff is not precluded from maintaining an action after the event has occurred."

The doctrine involved here is also stated in 2 Freeman on Judgments, 5th ed., where the author says at pp. 1501–4:

"Where a right or title comes directly in issue the parties are bound to bring forward every matter or ground which might be urged to establish or defeat it and will be estopped by the adjudication from attempting to relitigate the same right or title upon other or different evidence or grounds which might have been urged in the first action. Even a new evidentiary, as distinguished from a new ultimate fact, does not change the situation. *But from the rule that an adjudication affects no claims which the parties had no opportunity to litigate, it results that no judgment or decree can prejudice rights which had not accrued to either of the parties at the time of its rendition.* A decision that a right exists, or that a wrongful act has been committed, leaves the party at liberty to show at a future time that since the decision was pronounced the right has expired or the wrong has been abated. *And the same is true with respect to a decision that no right or cause of action exists; it does*

*not bar a second action when new facts have created a right or cause of action. The fact that the same subject matter was involved in the former action is wholly immaterial. . . .*

"Under no circumstances will a judgment or decree take effect upon rights not then existing. *This principle is the basis of the rule that the denial of relief because the action was prematurely brought, is not on the merits and therefore not a bar.* 'The estoppel of a judgment extends only to the facts as they were at the time the judgment was rendered, and to the legal rights and relations of the parties as fixed by the facts so determined; and when new facts intervene, before the second suit, furnishing a new basis for the claims and defenses of the parties respectively, the issues are no longer the same and consequently the former judgment cannot be pleaded in bar.' . . .

"While adjudications affecting the status of parties are governed by the principles of res judicata, where the conditions of considerations upon which this status is determined may change from time to time, *an adjudication, while doubtless conclusive as to the situation at the time it was made, does not prevent a new adjudication based upon subsequent changed conditions. This is true as to infants* and insane or incompetent persons. . . ." (Italics ours.)

To the same effect, *Harris* v. *Flack,* 124 N. E. 377 (Ill., 1919); *People* v. *Ocean Shore R. R.,* 196 P. 2d 570 (Cal., 1948); *West Side R. R. Co.* v. *Pittsburgh Cons. Co.,* 219 U. S. 92; *Blair* v. *Commissioner,* 300 U. S. 5; *State Farm Ins. Co.* v. *Duel,* 324 U. S. 154, 162; cases cited in 30 Am. Jur. p. 943, footnote 20; Developments in the Law Res Judicata, 65 Harv. L. Rev. 820, 836–37. See *Avellanet* v. *Porto Rican Express Co.,* 64 P.R.R. 660, 675–76; *Buscaglia, Treas.* v. *Tax Court,* 72 P.R.R. 576, 584; *Gelpí* v. *Tugwell,* 123 F. 2d 377 (C.A. 1, 1941). *Cf. United States* v. *Silliman,* 167 F. 2d 607 (C.A. 3, 1948); *Hornstein* v. *Kramer Bros. Freight Lines,* 133 F. 2d 143 (C.A. 3, 1943); *Bruszewski* v. *United States,* 181 F. 2d 419 (C.A. 3, 1950); *Perkins* v. *Benguet Consol. Mining Co.,* 132 P. 2d 70 (Cal., 1942).

As the foregoing authorities indicate, a judgment for the defendant, which is based solely on the ground that the suit

was brought before the occurrence of an event which is a prerequisite of the cause of action on which the suit was brought, would not sustain a plea of *res judicata* against a second suit brought by the plaintiff after the occurrence of the necessary event. Potentially, that is exactly the situation here. The defendant has not won this suit because the trial court has found on the facts that Zoilo E. Chabrán is not his natural child. On the contrary, the only reason he prevails here is because § 113 of the Civil Code raises a presumption of legitimacy; under § 116 only the husband or his legitimate heirs can contest the said legitimacy; and the plaintiff is unable to produce a valid judgment declaring the child illegitimate. An impediment therefore exists preventing a filiation suit *at this time* by the plaintiff against the defendant. Shortly stated, the present filiation suit is premature. But the legal situation may change: the impediment against a filiation suit may be removed in the future by a valid judgment in a legitimacy suit. If that should occur, under the principle just stated the doctrine of *res judicata* would not prevent a new filiation suit by the plaintiff against the defendant, based on the changed legal situation, provided it is not barred by prescription under § 126 of the Civil Code.[8]

 ■ It is not for us to say whether the status of Zoilo E. Chabrán should be left in its present posture. But we cannot be blind to the social reality that, whatever may have been the *mores* of our people in the past, today some in this community prefer the truth as to their status rather than a fictitious legitimacy. *Cf. Núñez v. Lacot, supra,* p. 78. Angélica Chabrán, representing her child, has made it clear by bringing the filiation suit against Zoilo Méndez that to her the status of illegitimacy for her son is not so serious as the

---

[8] For a recent interpretation as to § 126 of the Civil Code, see *Fuentes v. District Court,* 73 P.R.R. 893.

The rule as to *res judicata* laid down in *Calaf et al. v. Calaf,* 17 P.R.R. 185, affirmed in 232 U. S. 371, and *Aguilera v. Pérez,* 51 P.R.R. 1, cited in footnote 3 of *Fuentes v. District Court, supra,* is obviously distinguishable from the present case. See 65 Harv.L.Rev. 820, 836–37.

loss of his rights as an alleged natural child of Zoilo Méndez. However, the Legislature has placed a roadlock in her path— § 116 of the Civil Code. The child therefore cannot pursue the matter any further unless and until the legitimate heirs of Frank Chaulón take some action under § 116.

■ Again because the status of a minor is involved, we deem it advisable to make some comments which still become pertinent only if the legitimate heirs of Frank Chaulón attempt to exercise their rights under § 116. We agree, as the lower court held, that there is no way to "correct the judgment" in the legitimacy case without amending the pleadings, in view of the failure to join Zoilo E. Chabrán as a defendant in the original complaint. On the other hand, when the status of a minor is involved, we think the parties should be given every reasonable opportunity to adduce testimony on the facts and to obtain a decision on the merits. We therefore see no objection to a renewal by the legitimate heirs of Frank Chaulón of the contention that the child is not legitimate. If one of the heirs refuses to become a plaintiff in such a legitimacy suit, we see no reason why this should bar the other heirs from pursuing their cause of action under § 116 of the Civil Code. The restrictive policy of the law behind § 116 having been fulfilled by requiring that at least one of the heirs shall voluntarily appear as a plaintiff in such a suit, the other heirs may, as in other situations, be joined as defendants if they refuse to appear as plaintiffs. See Rule 19 (a) of the Rules of Civil Procedure; *Vega* v. *Cía. Popular de Transporte*, 72 P.R.R. 491. Also, our holding that the judgment in the legitimacy case is void does not wipe out the complaint in that case. Consequently, the heirs of Frank Chaulón or one of them if he chooses may continue the legitimacy suit originally begun by Frank Chaulón. Or such heirs or one of them may institute a new suit contesting the legitimacy of Zoilo E. Chabrán. But in either event, as already noted, Zoilo E. Chabrán would be an indispensable party defendant. And we assume that the mother would

admit, as she did in her answer in the original legitimacy suit, that in fact the child was not legitimate because of physical impossibility of access to her by the husband during the crucial period.[9] Under those circumstances it would be the better practice for the trial court to appoint a guardian *ad litem* for the child rather than to permit the mother to represent him, in view of the possible conflict under those circumstances of the interests of the mother and the child. See Rule 17 (*f*) of the Rules of Civil Procedure and *Biaggi* v. *District Court, supra*. And to avoid the possible contention that a judgment based on facts admitted in the answer was in substance a settlement with regard to status, in violation of § 1713 of the Civil Code, the trial court should take testimony on the issues in the case and make findings of fact based on the testimony.[10]

We have not overlooked the possibility that in any future legitimacy suit the defendants may contend that the cause of action is barred by the statute of limitations. In deciding the motion for summary judgment, the Humacao court did not pass on the contention made before it by the defendant, which is not renewed before us by the defendant in this appeal, that the cause of action in the filiation suit had prescribed. We likewise have not passed on that question, for the rule is that even if it might seem from the pleadings as though the action was barred by the statute of limitations, a judgment may not be attacked collaterally on that ground. There may have been a number of reasons, in-

[9] As we pointed out in *Cubano* v. *Del Valle*, 69 P.R.R. 538, 540, our Code does not contain § 109 of the Spanish Civil Code, which provides that "A child shall be presumed to be legitimate, even though the mother should have declared it to be illegitimate or should have been convicted of adultery." But the pleadings and testimony must be confined to showing physical impossibility of access by the husband. Testimony showing adultery by the wife is inadmissible. *Cubano* v. *Del Valle, supra.*

[10] See *Ex Parte Morales*, 17 P.R.R. 1004; *Ex Parte Santiago et al. and The People*, 21 P.R.R. 359; *Valdés* v. *Hastrup*, 64 P.R.R. 569, 572; *Rivera* v. *Heirs of Díaz*, 70 P.R.R. 168, 181–83, and concurring opinion, pp. 197–98. *Cf. Pagán* v. *Heirs of Padilla*, 42 P.R.R. 941.

cluding waiver, why the court which entered the judgment found that the statute of limitations did not apply. *Herron* v. *Dater*, 120 U. S. 464, 477; *Palmer* v. *Board of Chosen Freeholders*, 71 Atl. 285 (N.J., 1908); *Head* v. *Daniels*, 15 Pac. 911 (Kans., 1887). See also, by analogy, *Colt* v. *Colt*, 111 U. S. 566; *Associated Oil Co.* v. *Mullin*, 294 Pac. 421 (Cal., 1930); *Schodde* v. *United States*, 69 F. 2d 866 (C.A. 9, 1934); *Capper* v. *Short*, 11 S.W. 2d 717 (Ky., 1928).

As we have undertaken to discuss other aspects of the litigations which may conceivably arise in the future with reference to a challenge to the legitimacy of Zoilo E. Chabrán in the pending legitimacy suit or in a new case, we think we should add that what approach they desire to use on the question of prescription, on which we express no opinion, is for the true parties in interest exclusively to determine. *Cf. Fuentes* v. *District Court, supra; Meléndez* v. *Iturrondo, supra; Bithorn* v. *Santana*, 68 P.R.R. 281. For example, we assume *arguendo* that the statute of limitations has run. Even under those circumstances it is for the guardian *ad litem* of Zoilo E. Chabrán to determine whether the best interests of the child would be served by waiving prescription. That is a matter on which Zoilo Méndez cannot be heard in the legitimacy suit. Even if he should file a petition for intervention in such a suit and it should be granted, he could intervene at the most to prevent a finding, which is not appropriate in the legitimacy case, that he is the father of the child. He may be entitled to argue that that issue should not be adjudicated in the legitimacy suit. See *Cubano* v. *Del Valle, supra*. But he can have no intervention in the true issue before the court, the legitimacy of the child, including such questions as whether the right of the husband or his legitimate heirs to challenge legitimacy is barred by prescription, or whether the defendants may waive such prescription.[11]

---

[11] The lower court stated in a footnote: "The facts alleged in the legitimacy complaint are not sufficient to constitute a cause of action. There

For the reasons stated, the judgment of the former district court of Humacao granting the motion of the defendant for a summary judgment in the instant filiation case will be affirmed.

is no allegation of physical impossibility of access by the husband to the wife within the 120 days of the 300 days preceding the birth of the child. This omission is not supplied by the answer. We therefore seriously doubt the correctness of a judgment *on the pleadings* in the terms in which the judgment of the San Juan Section is couched. As the trial court did not take any testimony, we cannot see how it could reach conclusions which are not sustained by the pleadings. However, we believe that the said judgment cannot be attacked collaterally, although it could be attacked directly on this ground. . . ."

We make no comment on this, except to point out that if the legitimate heirs of Frank Chaulón or one of them hereafter presses the present pending legitimacy suit in the San Juan court or files a new one, the question of whether the complaint alleges facts which constitute a cause of action will be a matter for the court to determine if that question is raised by the defendants.