[Civ. No. 18564.   First Dist., Div. Two.   Feb. 26, 1959.]

COUNTY OF SAN MATEO, Petitioner, v. CITY COUNCIL OF THE CITY OF PALO ALTO et al., Respondents.

Keith C. Sorenson, District Attorney and Howard E. Gawthrop, Deputy District Attorney, for Petitioner.

John R. Nimocks, City Attorney, for Respondents.

KAUFMAN, P. J.—The city of Palo Alto, situated in the county of Santa Clara, is a municipal corporation and a charter city organized and existing under the laws of the State of California. On November 10, 1958, its city council passed a motion pursuant to Gov. Code, sections 35300-35326, "Annexation of Uninhabited Territory Act of 1939," directing their city manager to commence proceedings for the annexation of 819 acres of land located within the boundaries of San Mateo County known as "Bayfront Annexation." A description of the above mentioned land was filed with the boundary commissions of the counties of San Mateo and Santa Clara.

The reply from the San Mateo County Boundary Commission stated that the legal description of the proposed boundary was definite and certain but that it could not approve and, in fact, specifically disapprove the proposed annexation on the ground that city annexations over county boundary lines are not authorized by law. The Santa Clara County Boundary Commission neither approved nor disapproved the proposed annexation since the property was not situated in their county.

The Palo Alto City Council on December 8, 1958, adopted a resolution giving notice of the proposed annexation and setting a date to hear any opposition.

The county of San Mateo, a political subdivision of this state, instituted these proceedings in mandamus and in certiorari, questioning the legality of the above resolution on the ground that a city has no jurisdiction to annex property located in another county.

■ Mandamus is a proper remedy to compel the City Council to terminate proceedings under the Annexation of Uninhabited Territory Act of 1939, prior to the time when quo warranto becomes available. ■ Certiorari is a proper remedy to test the validity of annexation proceedings under that statute. (See *Jefferson Union Sch. Dist.* v. *Sunnyvale City Council*, 129 Cal.App.2d 264, 267-268 [277 P.2d 104], and cases cited therein.) Although petitioner could have instituted these proceedings in a lower court, we have determined that the facts of this case make it a proper one for the exercise of our original jurisdiction.

■ The basic question is whether a city may annex territory situated in another county. ■ Annexation is governed by the general laws of the state and not by municipal law. (Cal. Const. art. XI, § 6; 34 Cal.Jur.2d 670.)

■ There is no code provision directly authorizing or

prohibiting such annexation. Review of the code sections dealing with annexation and related matters reveals, however, the clear implication that a city must be wholly located in one county.

Section 34302 of the Government Code provides that "Any portion of a county . . . may become incorporated pursuant to this chapter . . ." (New cities.) Government Code, section 35201.5 (territory owned by a city or a contiguous school district), provides that, ". . . a city may annex noncontiguous territory . . . which lies in the same county as that in which the city is situated . . ." If the proceeding involves the annexation of land to one city and its detachment from another city, a certificate of the filing of the abstract of vote must be transmitted to "the board of supervisors of the county in which the cities are situated." (Gov. Code, § 35256.) The Municipal Consolidation Act of 1913 gives authority for the consolidation of "contiguous cities situated in the same county." (Gov. Code, § 35803.)

The Annexation Act of 1913 (Gov. Code, §§ 35100-35158 sets forth the procedure for the annexation of inhabited territory by a city. Section 35116 provides in part:

"Upon receiving a petition signed by not less than one-fourth of the qualified electors residing within the territory, as shown by the county registration of voters, . . . . The city clerk and the county officer having charge of the registration of voters shall, within two weeks, check the petition and certify the sufficiency thereof . . ."

Section 35130 provides that annexation elections shall conform as nearly as possible with the Election Code provisions concerning general elections. Section 9706 of the Election Code states that voting precincts for a municipal election may consist of the regular election precinct established for state or county elections.

Section 35317 (uninhabited territory) provides that the Secretary of State shall, upon receipt of certified copy of the annexation ordinance, file it and transmit a certificate of the filing to ". . . the board of supervisors of the county in which the city is situated." Similar language may be found in section 35145, providing for the annexation of inhabited territory. Section 34001 of the Government Code (cities generally) states that the term "Board of Supervisors" means the board of supervisors of the county within which the city or territory is situated. Section 34051 provides that no person is entitled to vote in a city election unless he is a qualified voter

of the county. The clerk of the legislative body of a city must file an affidavit of completion of certain enumerated proceedings with "the recorder of the county in which the city is located . . ." (Gov. Code, § 34080.)

Government Code, section 71040, states that ". . . the board of supervisors shall divide the county into judicial districts for the purpose of electing judges and other officers of municipal and justice courts . . ."

Section 71040.1 provides that upon annexation of territory, the boundaries of the judicial district, which includes the annexing city, shall automatically be changed to include the territory annexed. This would mean that territory situated in San Mateo County would be included in a judicial district situated in Santa Clara County. Section 71002 provides that the board of supervisors shall provide suitable quarters for both municipal and justice courts. If the territory automatically becomes part of the Santa Clara County judicial system, then the Santa Clara County Board of Supervisors would be exercising control over territory in another county. This, they may not do.

Section 35305, Annexation of Uninhabited Territory Act, might infer that the annexation procedure in issue is permissible. That section provides:

"Upon receiving a written petition requesting annexation, . . . and signed by the owners of not less than one-fourth of the land in the territory by area, and by assessed value as shown on the last equalized assessment roll of the county or counties in which the territory is situated, . . ."

Despite the possible inference that might be drawn from the above section, it is clearly evident from the remaining sections of the Uninhabited Territories Act and from the entire legislative scheme that a city must be confined to one county. ■ The extension of a city across a county boundary is so unusual and so attended with manifest practical inconveniences growing out of the relation of the municipal and county governments that an intention to authorize such an act should not be lightly inferred from the use of general language, but should be evidenced by express terms or by the clearest implication. (43 C.J. 117; 62 C.J.S. 136.)

Enumeration of only a few of the practical difficulties which would arise if Palo Alto were allowed to complete its proposed annexation further substantiates our conclusion.

Section 394 of the Code of Civil Procedure provides that an action against a city may be brought in the county in which

such city is located. If a city were allowed to exist in two or more counties, in which county would a plaintiff bring his action, or would he be allowed to pick the county in which he believed the courts would be most favorable to him?

The appellate department of a superior court has jurisdiction on appeals from the municipal and justice courts within the county. If the proposed annexation were completed, which superior court would have jurisdiction over appeals from the Palo Alto Municipal Court?

It would only be repetitious to cite further authority. Suffice it to say that the entire scheme of the organization and enlargement of cities in the State of California contemplates the organization and existence of each city within a single county.

In view of the foregoing, we conclude that a writ of mandate should issue directing the City Council of Palo Alto to terminate proceedings under the Annexation of Uninhabited Territory Act of 1939.

Writ of mandate to issue.

Dooling, J., and Draper, J., concurred.

Respondents' petition for a hearing by the Supreme Court was denied April 22, 1959.